# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

SAMANTHA S.,

          Plaintiff,

    v.              5:19-CV-621
                  (ATB)

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

---

VICTORIA H. COLLINS, ESQ., for Plaintiff
FERGUS J. KAISER, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

  This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 7).

## I. PROCEDURAL HISTORY

  On March 7, 2016, plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning June 1, 2011. (Administrative Transcript ("T") 216-22). Plaintiff's application was denied initially on April 29, 2016. (T. 113-20). Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Victor Horton on February 13, 2018. (T. 35-82, 127-28). At the hearing, plaintiff amended her disability onset date to June 24, 2015. (T. 39-40). Then, the ALJ heard testimony from plaintiff, as well as vocational expert ("VE") Terri Crawford. (T. 41-

81).  On June 6, 2018, the ALJ issued an order denying plaintiff's claims.  (T. 17-34).

The ALJ's decision became the Commissioner's final decision when the Appeals

Council denied plaintiff's request for review on April 11, 2019.  (T. 1-6).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In

addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities.  If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of

the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859

F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

Plaintiff was born on December 25, 1965, making her 52 years old on the date of the administrative hearing.  (T. 41).  She lived in a mobile home with her husband.  (T. 42).  In addition to a GED, plaintiff held a degree in nursing.  (T. 42-43).  Although she had a driver's license, plaintiff did not drive.  (T. 63).  In the 15 years prior to applying for disability, plaintiff worked as a nurse and a payroll clerk.  (T. 46-54).

Plaintiff testified that her diagnoses of fibromyalgia, lupus, kidney disease, Reynaud's disease, degenerative disc disease, and COPD prevented her from working full-time during the alleged disability period.  (T. 56-59).  Plaintiff also had "some issues" with depression and anxiety.  (T. 60).  She took a number of different medications that made her "very tired."  (T. 61).  The diuretics she took caused her legs to swell.  (T. 66).  She used a nebulizer twice a day, for twenty minutes at a time.  (T.

4

67).  When she was sick, she required the nebulizer every couple hours.  (*Id.*).  Despite her physicians' orders, she smoked approximately half a pack of cigarettes every day. (T. 57).  She struggled with memory issues and "brain fog."  (T. 68-69).  In 2015, she experienced a migraine approximately two times per month.  (T. 71).

Plaintiff's husband was responsible for household tasks, including cooking, cleaning and laundry.  (T. 63).  Plaintiff spent most of the day in bed; she would get up for approximately one hour when her husband came home from work.  (T. 63-64).  She required her husband's assistance getting dressed.  (T. 68).  Plaintiff estimated that, during the alleged period of disability, she could walk for two to three minutes, stand for five minutes, and sit for ten minutes at a time.  (T. 64).  She found a gallon of milk to be heavy.  (*Id.*).  At the hearing, plaintiff used a medically prescribed cane to walk. (T. 70).  She suffered from hand tremors.  (T. 70-71).

## IV.   THE ALJ'S DECISION

After reviewing the procedural history of the plaintiff's application and stating the applicable law, the ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") during the time period between plaintiff's amended onset date of June 24, 2015 and the date last insured of December 31, 2015.  (T. 20).  At step two of the sequential evaluation, the ALJ found that plaintiff had the following severe impairments: lupus, fibromyalgia, degenerative disc disease, chronic obstructive pulmonary disease, asthma, kidney disease, chronic pain syndrome, depression, and generalized anxiety disorder.  (*Id.*).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the

severity of a Listed Impairment.[1]  (T. 20-22).

At step four, the ALJ found that plaintiff

> had the residual functional capacity to perform sedentary work (lift or carry 10 pounds occasionally and 10 pounds frequently, stand or walk for two hours out of an eight-hour workday and sit for six hours out of an eight-hour workday) as defined in 20 [C.F.R.] 404.1567(a) except: She could climb stairs and ramps occasionally, but never climb ladders and scaffolds.  She could occasionally stoop, but never kneel[,] crouch or crawl.  She could frequently push and pull with her arms and legs, and reach in all directions.  She could reach overhead occasionally and never lift overhead.  She must avoid concentrated exposure to extreme cold and heat, wetness, humidity, fumes, odors, dust and gases.  She could demonstrate adequate judgment to make simple work-related decisions.  She could respond appropriately to supervisors and co-workers in a task-oriented setting, where contact with others, including the public, is infrequent.  She could adapt to routine/simple work changes.  She could perform some moderately complex work tasks further defined as SVP 4 work and below.  She could perform work at a normal pace of an average worker, but no production line work or other work if hourly quotas are required.

(T. 23-24).

At step five the ALJ found that plaintiff was capable of performing her past relevant work as a payroll clerk, as this work did not require the performance of work-related activities precluded by plaintiff's RFC.  (T. 27).  Thus, the ALJ found that

---

[1]The ALJ considered Listings 1.02 (Major Dysfunction of a Joint); 1.03 (Reconstructive Surgery or Surgical Arthrodesis of a Major Weight Bearing Joint); 1.04 (Disorders of the Spine); 1.05 (Amputation); 1.06 and 1.07 (Fractures); 1.08 (Soft Tissue Injury); 3.02 (Chronic Respiratory Disorder); 6.03, 6.04, and 6.05 (Chronic Kidney Disease); 6.06 (Nephrotic Syndrome); 6.09 (Complications of Chronic Kidney Disease); 14.02 (Systematic Lupus Erythematosus); 14.04 (Systematic Sclerosis and Scleroderma); 14.09 (Inflammatory Arthritis); 12.04 (Depressive, Bipolar, and Related Disorders); and 12.06 (Anxiety).

plaintiff was not disabled.  (*Id.*).

## V.   <u>ISSUES IN CONTENTION</u>

Plaintiff raises the following contentions:

1.   The Commissioner failed to properly evaluate plaintiff's credibility and subjective complaints of disabling symptoms. (Plaintiff's Brief ("Pl.'s Br.") at 10-12) (Dkt. No. 9).

2.   The Commissioner incorrectly concluded that plaintiff did not have an impairment or combination of impairments that meets or medically equals Listing 1.04(A).  (Pl.'s Br. at 12-14).

3.   The Commissioner substituted his own judgment for competent medical opinions regarding his determination of plaintiff's RFC.  (Pl.'s Br. at 14-17).

4.   The Commissioner failed to state what limitations plaintiff has that are attributable to the medically determinably impairments of lupus and fibromyalgia that he found to be severe.  (Pl.'s Br. at 17).

The Commissioner contends that the ALJ applied the correct legal standards and his final decision was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 6-14) (Dkt. No. 10).  As set forth below, this court agrees with plaintiff and will remand this action for further proceedings before the Commissioner.  For the ease of analysis, plaintiff's arguments are addressed out of order and in a consolidated manner.

## DISCUSSION

**VI.**  **RFC/WEIGHT OF THE EVIDENCE/EVALUATION OF SYMPTOMS**

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations.

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular

and continuing basis" means eight hours per day, for five days per week, or an

equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL

252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d

Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No.

5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018);

*Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*,

200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical

facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R.

§§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)

(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v.

Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019);

*Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions

plaintiff is capable of performing, and may not simply make conclusory statements

regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2. Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings."  The responsibility for determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2

(S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL
3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical
opinion of a claimant's treating physician, . . . the opinion of the treating physician is
not afforded controlling weight where . . . the treating physician issued opinions that
are not consistent with other substantial evidence in the record . . . ." *Halloran v.
Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d
Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If an ALJ decides not to give
the treating source's records controlling weight, then he must explicitly consider the
four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2)
the amount of medical evidence supporting the opinion; (3) the consistency of the
opinion with the remaining medical evidence; and (4) whether the physician is a
specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v.
Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its]
notice of determination or decision for the weight [it gives the] treating source's
[medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an
ALJ assign less than controlling weight to a treating physician's opinion and fail to
consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to
conclude that the error is harmless unless a "searching review of the record . . . assures
us that the substance of the treating physician rule was not traversed." *Id.*

### 3.    Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must

take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[2] The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her]

---

[2] The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167.  The court will remain consistent with the terms as used by the Commissioner.

ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[3]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superceded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki v. Astrue*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 534 F. App'x at

---

[3] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

### B.   Application

Plaintiff argues that the ALJ erred in weighing the opinion evidence of record, and improperly substituted his own judgment for competent medical opinion in formulating plaintiff's modified RFC for sedentary work.  (Pl.'s Br. at 14-17).  The Commissioner contends that the RFC determination was not required to perfectly correspond with any particular medical opinion, asserting that "an ALJ is free to reach an RFC finding even without any supporting medical source opinions."  (Def.'s Br. at 8).

The administrative record includes opinions from two different treating sources outlining plaintiff's functional limitations.  Plaintiff's primary care physician, Neel Shah, M.D., completed a Medical Source Statement ("MSS") on May 8, 2017.  (T. 837-842).  The restrictive limitations set forth by Dr. Shah do not support the ALJ's modified RFC determination for sedentary work.  Specifically, Dr. Shah opined that plaintiff could occasionally lift up to 20 pounds but could never carry any amount of weight, due to her neck pain with radiculopathy, lumbar spinal stenosis, and COPD.  (T. 837).  Dr. Shah further opined that plaintiff could only sit for 15 to 20 minutes at a time, for a total of five hours in an eight-hour workday.  (T. 838).  He determined plaintiff could stand for 10 to 15 minutes at a time, for a total of two hours in an eight-hour workday, and could walk for 10 minutes at a time, for a total of one hour in an eight-hour work day.  (*Id.*).  Dr. Shah attributed plaintiff's exertional limitations to her lupus, degenerative disc disease, lumbar spinal stenosis and connective tissue disease.

(*Id.*).  He noted that plaintiff required frequent breaks, and needed to use a cane for walking.  (*Id.*).  Dr. Shah also concluded that plaintiff could never push, pull or reach overhead; and could occasionally handle and reach in all other directions.  (*Id.*).  Plaintiff could never perform any of the listed postural activities, including climbing stairs, balancing, stooping, kneeling or crouching.  (T. 840).

Dr. Shah stated that the limitations set forth in his MSS were "first present" on April 28, 2017.  (T. 842).  He also opined that plaintiff's limitations had lasted, or would last, for 12 consecutive months.  (T. 842).

In assessing the opinion evidence of record the ALJ provided a limited evaluation of Dr. Shah's MSS, affording it "no weight" because "[the] statement specifically says the limitations were present in April 2017 . . . .Thus, [the] opinion does not provide relevant evidence as to the [plaintiff's] limitations before [December 31, 2015,] the date last insured." (T. 26).

The second assessment of plaintiff's functional limitations contained in the administrative record was prepared by plaintiff's treating orthopedist, Stephen Robinson, M.D.  On November 6, 2014, Dr. Robinson prepared a Doctor's Report of MMI/Permanent Impairment in conjunction with plaintiff's Workers' Compensation claim.  (T. 1084-86).  According to Dr. Robinson's report, plaintiff's cervical impairment limited her to lifting and carrying up to five pounds occasionally.  (T. 1086).  Dr. Robinson opined that plaintiff could frequently sit, stand, and walk; and occasionally bend, stoop, or squat.  (*Id.*).  He concluded that plaintiff could engage in simple grasping and fine manipulation on an occasional basis.  (*Id.*).  She could never

14

reach overhead, and could occasionally reach at or below shoulder level. (*Id.*). Based on Dr. Robinson's opinion, plaintiff was unable to meet the requirement of sedentary work under the relevant Workers' Compensation regulations. (*Id.*). Notably, his opined limitations also precluded plaintiff from performing the work contemplated by the ALJ's RFC determination.

The ALJ considered Dr. Robinson's opinion and gave it "partial weight." (T. 26). The ALJ determined that Dr. Robinson's opinion regarding reaching overhead and operating machinery was well supported. (T. 27). He also found Dr. Robinson's opined "lack of limitation in sitting" to be "well supported." (*Id.*). The ALJ then concluded that other portions of Dr. Robinson's opinion lacked evidentiary support. Specifically, the ALJ determined that "unlimited standing/walking is contraindicated by her [various] diagnoses[.]" (*Id.*). The ALJ also found Dr. Robinson's "suggestion that [plaintiff] cannot lift more than 5 pounds is not supported and there are no examinations documenting loss of strength in lifting up to 5 pounds." (*Id.*). Last, the ALJ pointed out that Dr. Robinson's "suggestion that [plaintiff] cannot perform fine manipulation was given before her carpal tunnel syndrome surgery and is no longer current." (*Id.*).

The ALJ's treatment of the two medical opinions of record was flawed in many respects, amounting to legal error and compelling this court to remand for further proceedings. Turning first to Dr. Robinson's opinion, the ALJ failed to consider whether the orthopedist's opinion was subject to the treating physician rule. As previously set forth, an ALJ must first resolve whether a treating physician's opinion is

entitled to controlling weight; then, if not affording the opinion controlling weight, the ALJ must give "good reasons" for the limited weight afforded to the opinion by balancing the factors enumerated in 20 C.F.R. §§ 404.1527(c)(1)-(6) and 416.927(c)(1)-(6). Here, the medical evidence confirms that plaintiff regularly treated with Dr. Robinson, an orthopedic surgeon, for her cervical spine condition since at least 2012. (T. 1097-87). Although Dr. Robinson's functional capacity determination was prepared in conjunction with plaintiff's Workers' Compensation claim, the ALJ did not discount the opinion based on such circumstances, nor should he have. *See Colley v. Astrue*, No. 1:06-CV-0749 (LEK/VEB), 2009 WL 1392535, at *10 (N.D.N.Y. May 12, 2009) ("It would be illogical to hold that a treating physician's opinions are not entitled to weight simply because he had provided them in a workers' compensation context.").

Despite Dr. Robinson's extensive history with the plaintiff, the ALJ bypassed the treating physician analysis altogether. The ALJ's failure in this respect may have been harmless, to the extent a "searching review of the record" proved that "the substance of the treating physician rule was not traversed." *Estrella,* 952 F.3d at 96 (quoting *Halloran,* 362 F.3d at 32). However, in this case the ALJ's error was compounded by his inadequate explanations for the limited weight afforded to Dr. Robinson's opinion, as well as his blatant misinterpretation of the opined functional limitations.

For example, the ALJ cited to Dr. Robinson's opinion regarding plaintiff's "unlimited" sitting, standing, and walking abilities. (T. 26-27). However, as plaintiff points out Dr. Robinson actually opined that plaintiff could "frequently" sit, stand and walk. (T. 1086). The term "frequently" is specifically defined as the ability to perform

16

an activity from 1/3 to 2/3 of the time.  (*Id.*).  Thus, the very definition of the term implies a limitation of at least 1/3.  Moreover, Dr. Robinson had the option to, but did not, mark that plaintiff could "constantly" engage in such activities, or perform them more than 2/3 of the time.  (*Id.*).  Even if plaintiff could sit during 2/3 of an eight-hour workday, that would amount to less than the six hours per day that the ALJ determined plaintiff could sit.

Of greater concern is the ALJ's explanation for affording limited weight to Dr. Robinson's opinion regarding fine manipulation.  According to the ALJ, Dr. Robinson's opinion improperly "suggest[ed] that [plaintiff] cannot perform fine manipulation[.]" (T. 27).  Dr. Robinson actually determined that plaintiff could "occasionally" engage in simple grasping and fine manipulation, implying plaintiff's ability to perform these activities up to 1/3 of the time. (T. 1086).  The ALJ nevertheless rejected Dr. Robinson's opinion (or what the ALJ perceived Dr. Robinson's opinion to be), maintaining that the restrictive limitation was opined before plaintiff had carpal tunnel syndrome surgery, and therefore did not adequately represent her limitations during the closed disability period.  (T.  27).  This was, however, another erroneous interpretation of the medical evidence, as Dr. Robinson prepared his opinion over two months after plaintiff's August 28, 2014 surgery.  (T. 1127).

As a result of the ALJ's flawed evaluation of the fine manipulation limitations set forth by Dr. Robinson, and because Dr. Robinson's opinion was the only opinion afforded any weight by the ALJ, the RFC and ultimate disability determination was not supported by substantial evidence.  In his decision, the ALJ concluded that plaintiff

retained the RFC for modified sedentary work.  (T. 23).  Based on this RFC, he

concluded that plaintiff was capable of performing her past relevant work as a payroll

clerk, and was therefore not disabled.  (T. 27-28).  According to the Dictionary of

Occupational Titles ("DOT"), the title of payroll clerk requires the ability to

"frequently" handle and finger.  *See* DOT, Payroll Clerk, 1991 WL 672783.  However,

the record was devoid of any medical opinion supporting plaintiff's ability to meet the

fine manipulation requirements required of a payroll clerk.  Thus, the court is left to

conclude that after rejecting Dr. Robinson's more restrictive opinion, the ALJ

improperly substituted his own lay opinion as to plaintiff's functional capacity for fine

manipulation.

Although some evidence of record may have, arguably, supported plaintiff's

ability to engage in more than "occasional" handling and fingering, "[t]his court simply

cannot, and will not, re-weigh the medical evidence and/or create post-hoc

rationalizations to explain the Commissioner's treatment of evidence when that

treatment is not apparent from the Commissioner's decision itself." *Bartrum v. Astrue*,

32 F. Supp. 3d 320, 331 (N.D.N.Y. 2012) (quoting *Grogan v. Barnhart*, 399 F.3d 1257,

1263 (10th Cir. 2005); citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Melville

v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)); *Petersen v. Astrue*, 2 F. Supp. 3d 223, 234

(N.D.N.Y. 2012) (stating the same proposition).

The ALJ committed the same error in determining plaintiff's RFC for lifting and

carrying.  In the only opinion to which the ALJ afforded any weight, Dr. Robinson

opined that plaintiff could "occasionally" lift and carry five pounds.  (T. 1086).  The

ALJ specifically rejected this opinion based on the lack of any physical examination documenting such loss of strength.  (T. 27).  The ALJ ultimately concluded that plaintiff could "lift or carry 10 pounds occasionally and 10 pounds frequently[.]"  (T. 23).  The record, however, is devoid of any opinion evidence supporting this conclusion, and the ALJ failed to cite any other medical evidence on which he relied in rendering this determination.  On the contrary, Dr. Shah opined that plaintiff could never carry up to 10 pounds.  (T. 837).  Furthermore, treatment notes suggest that plaintiff exhibited, at times, upper extremity weakness due to an injury resulting from lifting.  (T. 622-31, 643-48).  Plaintiff testified that a gallon of milk was heavy for her to carry, and maintained that she could not lift any amount without experiencing pain. (T. 64, 263).

Admittedly, some of plaintiff's medical records may have contradicted Dr. Robinson's opinion with respect to lifting and carrying; however the ALJ is not a medical expert and it was improper for him to translate plaintiff's various medical examination findings into functional limitations.  *See Judd v. Berryhill*, 17-CV-1188, 2018 WL 6321391, at *7, 2018 U.S. Dist LEXIS 205177, at *23 (W.D.N.Y. Dec. 4, 2018) ("It is unclear to the Court how the ALJ, who is not a medical professional, determined the RFC without a medical source statement or consultative examination report to assist her in correlating the medical treatment notes into an assessment of Plaintiff's physical capacity for work-related activities.).

The court recognizes the lack of a specific medical opinion prepared during, or specifically referring to, the six-month period between plaintiff's amended onset date

19

and the date last insured.  This evidentiary gap did not, however, entitle the ALJ to substitute his own opinion for that of a medical expert. "[A]n ALJ has an affirmative duty to develop the medical record . . . and to seek out further information where evidentiary gaps exist, or where the evidence is inconsistent or contradictory." *Cadet v. Colvin*, 121 F. Supp. 3d 317, 320 (W.D.N.Y. 2015) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)). "[W]here a record contains no formal RFC assessments from a treating physician, and does not otherwise contain sufficient evidence (such as well-supported and sufficiently detailed informal RFC assessments . . .) from which the petitioner's RFC can be assessed, an 'obvious gap' exists and the ALJ is obligated to further develop the record." *Id*. at 320 (citing *Iacobucci v. Commissioner*, No. 1:14–CV–001260, 2015 WL 4038551, at *4–5 (W.D.N.Y. 2015)). Moreover, "[t]he lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required." *Jessica B. v. Comm'r of Soc. Sec.*, No. 3:18-CV-424 (FJS), 2019 WL 3494356, at *3 (N.D.N.Y. Aug. 1, 2019) (quoting *Zorilla v. Chater*, 915 F. Supp. 662, 666-67 (S.D.N.Y. 1996)).

There were various means by which the ALJ could have supplemented the record in order to fill the evidentiary gaps and ascertain relevant medical opinion.  As previously discussed, the record contained an MSS from Dr. Shah, plaintiff's primary care physician.  Dr. Shah's opinion was prepared after the closed disability period, and he specifically stated that his opined limitations were first present over a year after the alleged period of disability.  Although it was not necessarily improper for the ALJ to reject Dr. Shah's opinion based on these representations, Dr. Shah was treating plaintiff

during the closed disability period and the ALJ was empowered to re-contact him and request an opinion specifically tailored to the time period in question.[4]  Alternatively, the ALJ could have called upon a medical expert to evaluate the complete medical evidence, and offer an opinion regarding the extent of plaintiff's limitations as of his last-insured date.  *See, e.g., Bathrick v. Astrue*, No. 3:11–CV–101, 2012 WL 1069180, at *4 (D. Conn. Mar. 9, 2012) (despite a critical lack of medical evidence supporting his RFC finding that the plaintiff could lift 50 pounds, as required to perform unskilled medium work, the ALJ failed to avail himself of the several avenues available to him in an attempt to obtain the necessary medical evidence, such as requesting the opinion of a medical expert on the issue of lifting and carrying; because of the inadequacies in the record, the ALJ's RFC finding is necessarily flawed) (Report–Recommendation), *approved in relevant part*, 2012 WL 1068985, at *4–5 (D. Conn. Mar. 29, 2012).

The ALJ made no such inquiries.  Instead, he rejected the majority of opinion evidence submitted by plaintiff's treating physicians, resulting in an RFC determination crafted largely from his own interpretation of the medical findings.  Upon remand, the ALJ is directed to secure additional testimony, be it from a medical expert or one of plaintiff's treating physicians, to analyze the medical opinions and other evidence of record in order to properly determine plaintiff's RFC during the relevant six-month

---

[4]It appears plaintiff attempted to remedy this issue by submitting to the Appeals Council additional evidence from Dr. Shah's office, representing that the limitations opined in the May 8, 2017 opinion actually existed during the alleged disability period. (T. 7-8).  The additional evidence was not submitted by Dr. Shah, but instead was signed by a physician's assistant in the same practice. (*Id.*).  The Appeals Council declined to exhibit or consider this additional evidence. (T. 2).  Even assuming the Appeals Council properly rejected plaintiff's additional evidence, this did not excuse the Commissioner's failure to address crucial gaps in the medical opinion evidence.

time period.  *See, e.g., Schmelzle v. Colvin*, No. 6:12-CV-1159 (GLS/ATB), 2013 WL 3327975, at *8, 14 (N.D.N.Y. July 2, 2013).  After further developing the record and analyzing the relevant evidence, the ALJ should also conduct a proper evaluation of plaintiff's symptoms and explain his findings in accordance with the regulations.

## VII.  LISTED IMPAIRMENT

### A.    Legal Standard

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment.  *See* 20 C.F.R. §§ 404.1520, 416.920.  It is the plaintiff's burden to establish that his or her medical condition or conditions meet all of the specific medical criteria of particular listed impairments.  *Gabriel C. v. Comm'r of Soc. Sec.*, No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *4 (N.D.N.Y. Sept. 18, 2019) (citing inter alia *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)).  "Nonetheless, the ALJ is required to explain why a claimant failed to meet or equal the listings [w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Ramirez Morales v. Berryhill,* No. 6:17-CV-06836, 2019 WL 1076088, at *3 (W.D.N.Y. Mar. 7, 2019) (quoting *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (citation and internal quotations omitted)).  If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify. *Debra E. v. Comm'r of Soc. Sec.*, No. 6:18-CV-513 (NAM), 2019 WL 4233162, at *6 (N.D.N.Y. Sept. 6, 2019) (quoting *Sullivan v. Zebley,* 493 U.S. at 530).  In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the *one* most similar

listed impairment." *Sullivan v. Zebley*, 493 U.S. at 531 (emphasis added).

### B.    Application

Plaintiff contends that the Commissioner improperly concluded plaintiff's

impairments did not meet or medically equal listing 1.04(A) (Disorders of the Spine),

pointing to medical evidence of record which she argues is sufficient to meet the

listing's requirements.  (Pl.'s Br. at 12-14).  In response, the Commissioner argues that

there is other medical evidence of record showing plaintiff does not meet the

requirements of the listing.  (Def.'s Br. at 6-8).

Under listing 1.04(A), an individual is presumptively disabled if he or she suffers

from  "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis,

degenerative disc disease, facet arthritis, or vertebral fracture[ ], resulting in

compromise of a nerve root . . . or spinal cord" with "[e]vidence of nerve root

compression characterized by neuro-anatomic distribution of pain, limitation of motion

of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)

accompanied by sensory or reflex loss and, if there is involvement of the lower back,

positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App.

1, § 1.04(A).

In his decision, the ALJ provided the following analysis with respect to his

consideration of listing 1.04(A):

> Although there is a diagnosis that confirms some spinal abnormality, the
> spinal impairments result in no compromise or compression of a nerve root
> or the spinal cord with the neurological manifestations outlined in that listing
> (Despite the representative's argument that there is listing level spinal
> disease). Specifically, she does not have one of the listed disorders . . . in

conjunction with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, in connection with the lumbar spine impairment, also a positive straight leg raising test (sitting and supine). Therefore, the claimant's impairments do not meet Listing 1.04.

(T. 20-21).

Although the ALJ found plaintiff's degenerative disc disease was a severe impairment at step two, at step three he determined that there were no objective findings sufficient to meet the criteria of listing 1.04. (*Id.*). However, other than providing a limited summary of the evidence later in the decision, the ALJ failed to provide a specific rationale showing that the medical evidence of record does not meet the listing. Instead, the ALJ merely stated that plaintiff's spinal impairments fail to rise to the level of the criteria in listing 1.04. (T. 20). "Notably, it is the ALJ's responsibility to 'build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review.'" *Monsoori v. Comm'r of Soc. Sec.*, No. 1:17-CV-01161, at *3 (W.D.N.Y. June 4, 2019) (quoting *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012)). "While the ALJ may ultimately find that [a considered listing] do[es] not apply to Plaintiff, he must still provide some analysis of Plaintiff's symptoms and medical evidence in the context of the Listing criteria." *Critoph v. Berryhill*, No. 1:16-CV-00417, 2017 WL 4324688, at *3 (W.D.N.Y. Sept. 28, 2017) (quoting *Peach v. Colvin*, No. 15-CV-104S, 2016 WL 2956230, at *4 (W.D.N.Y. May 23, 2016)). The failure to do so may constitute grounds for remand. *See, e.g., Cardillo v. Colvin*, No. 6:16-

CV-134(CFH), 2017 WL 1274181, at *4 (N.D.N.Y. Mar. 24, 2017) (holding that merely stating that the ALJ has considered the requirements of a listing was "patently inadequate to substitute for specific findings in view of the fact that plaintiff has at least a colorable case for application of listing 1.04(A)" and that where there is "record support for each of the[ ] [necessary] symptoms . . . the ALJ was required to address that evidence, and his failure to specifically do so was error that would justify a remand"); *Torres v. Colvin*, No. 14-CV-479S, 2015 WL 4604000, at *4 (W.D.N.Y. July 30, 2015) (remanding where "the record evidence suggests that Plaintiff's symptoms could meet the Listing requirements in 1.04(A)" but the ALJ's "only reference to it is a recitation of the standard").

Because the court is remanding this matter on a separate basis, it need not decide whether the ALJ's cursory step three assessment relative to plaintiff's spinal impairment constituted legal error.[5]  However, on remand the ALJ shall perform a proper evaluation of the medical evidence as it pertains to listing 1.04(A), and provide a thorough explanation of his findings as to whether Plaintiff's impairments meet or equal Listing 1.04(A).

## VIII. <u>PLAINTIFF'S REMAINING ARGUMENT</u>

As set forth above, plaintiff has identified additional reasons why she contends the ALJ's decision was not supported by substantial evidence.  (Pl.'s Br. at 17).

---

[5]Plaintiff appears to have made at least a colorable case for application of listing 1.04(A), to the extent objective testing confirmed spinal cord compression at various cervical levels, and treatment notes document upper extremity weakness and limited cervical spine range of motion.  (T. 484-87, 610-13, 622-31, 643-48).

However, because the court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-06844, 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand") (Report–Recommendation), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **REVERSED**, and this action is remanded pursuant to sentence four of 20 U.S.C. § 405 for further proceedings as discussed above, and it is

**ORDERED**, that judgment be entered for the **PLAINTIFF**.

Dated:   May 8, 2020

Andrew T. Baxter
U.S. Magistrate Judge

26